And I will be presiding over this matter with Justices David Ellis and Justice Eileen O'Neill-Burke. Before we begin, I'd like to advise the attorneys that each side will have about 10 minutes to present their oral arguments. And after that 10 minutes has elapsed, the justices will then individually ask questions of the attorney. And then, of course, we will proceed to the other party. And after the 10 minutes has elapsed, the justices again will ask questions of the athlete. And then after that, the appellant will have some time for rebuttal. With that, I would like to ask the attorneys if you would identify yourselves for the record before we begin. Good morning, Your Honors. My name is Robert Stein. I am the attorney for the appellant, SID Recovery. I'm sorry. I didn't hear your name, but I think it's problems at my end. Mr. Stein, is that correct? Yes. It's Robert Stein, Your Honor. Good morning. Good morning, Mr. Stein. Good morning, Your Honors. Good morning. I'm Laurel Wunder on behalf of the athlete, the state of Illinois. Good morning, Ms. Wunder. All right. Thank you for identifying yourselves. And with that, we will now let Mr. Stein begin with his presentation. Mr. Stein. Thank you, Your Honor. Is it okay if I sit down? Otherwise, I'm going to have to realign the camera here. No, that's perfectly acceptable. I don't think I'll need the full 10 minutes. I think our position is set forth in the brief. But I think one point that is very important to make here and what the state does not dispute, if you go back to their complaint and the release in this case, they pursued SIV's claims. SIV took an assignment on the six claims that are at issue here. They pursued the claims for those purchases. The release released those claims. If this goes forward, if SIV or the original purchaser were to sue and the original purchaser doesn't have standing because it assigned the claims, Hitachi would take the position correctly that those claims are released. So what the state has done is they have elected to pursue the claims at issue for SIV. They've settled those claims. They've gotten money for those claims. They've released those claims. And they are prohibiting SIV who owns those claims from obtaining the money that the state received for its claims, which are actually a property right. So at heart, this is, it would be a taking. You know, they're literally taking a right, a property right that belongs to SIV, settling it for money, and then saying, you can't get that money. We're giving it to someone else. They don't dispute any of those facts. Now, the fact that they may claim it's for administrative convenience or otherwise, frankly, is an irrelevancy. They could have, to the extent they have discretion, they could have chosen not to pursue the claims for assignees. That would have been a different issue. If they said, we're not pursuing your claims, you're an assignee, you go off and you take care of it on your own, that may have been within their discretion. But when the state acts and the state decides that it's going to pursue your claims, it cannot then forbid you from obtaining the value it has received for your claims. The other important thing is that the state now is taking the position that it didn't prohibit assignees from filing claims. But the record is clear in this case. And, you know, while people are entitled to argue different sets of different legal arguments, they're not entitled to different factual arguments. The record is clear that SIB's claims were rejected solely because they were an assignee. And in fact, if you look at the state's position when we moved to intervene, the state took the position, and I'm just looking for the page site. It's at, I believe, record at 16662 through 3. It took the position that SIB was not entitled to intervene. It was not entitled to participate in the settlement because it was an assignee. That was the exact words the state uses, and it's at page 14663 of the record. It says the state did not allow the assignee of any claim to the CRT settlement to submit a claim on its behalf. So that was the reason they were rejected. That was the state's position at the time of the intervention. And when Judge Taylor said, no, no, that can't be right. You can't bar assignments. At the next round of argument, that's when they took a different position saying, well, the claimant had to file, fill out the form. Well, they were the claimant. They bought through the assignment the claim. But in the notice, it wasn't even confusing. It was clear that assignees could not file the claim, and then it went on to talk about claimant. But here, SIB is the claimant. And if the state's taking a position that assignments aren't allowed, I mean, it creates a myriad of problems as I'm sure the justices here are all familiar with. Asset purchase agreements are a recognized form for corporate buyouts in the state of Illinois, and these claims go back to 1995. So I am sure there are hundreds and thousands of businesses that have been purchased, you know, bought and sold through asset purchase agreements. So is the state's position that none of those businesses are entitled to make a claim? And if so, how did they ever go about enforcing that? And it makes no sense because when you do an asset purchase agreement, you purchase all of the assets. So if the state's taking the position that, no, we can carve it out, and even though the law has long recognized your ability to purchase all of these assets, now it's only some of them. I don't know how they would do that, but I think, you know, the important thing here is it would seem to me I didn't see anything indicating that the state would take that position if you had an asset purchase agreement and you were the subsequent operator of the business. But legally, you're in exactly the same position as whether you purchased a specific set of assets or all of the assets of a business. And I think those are the only points I wanted to make beyond what was in the brief, so I'd be happy to hear any questions you may have. All right. Thank you. So, Justice Burke, do you have questions that you would like to ask at this time? Good morning, Mr. Stein. How are you today? Good, Justice Burke. How are you? Good. Okay, I had a question about the state was enforcing a regulation, correct, on how you can recover for SIB, right? You didn't have to only go through SIB in order to get recovery. People could file their own claims with the state. People, that is correct, Judge, yes. And the recovery was limited to people who resided within Illinois. Is that correct? You know, that's a very interesting point because it was limited. If you looked at the complaint and the release, it's claims for purchases that were made by people who resided in Illinois. Now, they confused citizenship with residency. And I know this issue because the Supreme Court case on the principal place of business was actually my case. It's the Hertz versus Frum case. Illinois and every state takes the position, if I have a business that's headquartered in California but I operate a physical location in Illinois and I make purchases in Illinois, I guarantee you I have to pay taxes and filing fees in Illinois. I'm a resident of Illinois even though I'm not a citizen. The complaint was properly bought on behalf of purchases made by all residents. And that would be the right standard because I don't know how you would ever parse out citizenship from residency for the, you know, you're suing Hitachi for all of the purchases made in Illinois essentially, right? I don't know. I do a lot of class actions. I have no idea how you would parse that out if you said, well, we're suing for all of the purchases made by businesses located in Illinois and headquartered in Illinois because, you know, how do you know from the sales that took place in Illinois? You could probably tell from the shipping address or whatever that it went to a business in Illinois but how you would ever determine where the headquarters was, I don't know. So, when you look at the complaint and the release, it says residents. When you look at the notice, they switch it and say you had to be headquartered or incorporated in Illinois. So, several of your claimants that you were representing, you dismissed their claims based on this issue, right? Based on the residency versus headquarters and. We dismissed it based on the residency. If they were not residents, we dismissed it. There are two or three of the six claims that remain. I believe it's two. Where they were residents. They had operations. They went out. They bought the monitors in Illinois, paid for them in Illinois, used them in Illinois. But the corporate headquarters or the incorporation was outside of Illinois. And the state disputes that. But so, the six claims left were clearly all residents in the constitutional and legal sense. Two of them were not headquartered or incorporated in Illinois. Okay. Thank you. That's my only question. Okay. But I did have another point on that, which is, as you said, I understand. And I think the state's absolutely right. They brought the claim on behalf of residents. That's all they can do. But if an out of, if a resident makes an assignment to somebody out of state, that doesn't invalidate the assignment or the out-of-state assignee's standing. Because if you do that, then you would have a huge constitutional problem, right? It would be a Commerce Clause violation. Was that a portion of Judge Taylor's reasoning in denying the SIV claims? I don't believe it. Was that SIV was specifically not headquartered, not residents, not anything connected to Illinois? I don't believe it was. My understanding, and my partner argued the case, but I have read the transcripts and I was thoroughly involved with it, was he accepted the state's argument that they changed their argument and said, oh, no, no. Residents are allowed to make claims. We didn't allow this claim because the original purchaser didn't verify it. Well, first of all, that's not what the notice said. The notice said the claimant who had the SIV had to verify it. But more importantly, that wasn't what the rejection said. The rejection was crystal clear that it only went to the fact that it was the, you were an assignee filing the claim. And we want to make clear, we did in our brief, we're not arguing for special treatment. We're not arguing that we don't have to meet the same standards as anybody else in terms of whatever verification the claims processor would want. But we should get the opportunity to be able to present that information. All right. Thank you, Mr. Stein. Thank you. Justice Ellis? Questions? I think you're on mute, Justice Ellis. Yes. Justice Ellis, you're on mute. Your microphone. Sorry. Had some background noise. I was trying to spare you. Well, it's still morning for one minute, so good morning, Mr. Stein. Good morning, Justice Ellis. I do want to ask you about something you said in your opening statement, which I don't think was the subject of much discussion in the brief. But let me start here. Looking at this notice, and this notice, this would have, I think, been the long form of the notice. There's a question, can I have someone else submit a claim on my behalf? And it does say we will not accept or pay claims filed by someone else, an S&E. And I understand your argument that that's not really what the state is saying. But the next sentence says, this means that when you submit your claim, the name and address of the claimant must match the name and address to which the payment is to be sent. If these names and addresses do not match, your claim will be invalid. Isn't that the problem you had with your filing? No, Your Honor. The problem we had was, and what the state's trying to do now, is conflate the term claimant with the term original purchaser. So we are an assignee. We're not an aggregator. And I think that's an important distinction here. The aggregators go around, and they actually, you know, same way lawyers help people. They help people file claims in their own names, you know, business X. Here, SIB owns the claim. It was an asset purchase. They are the claimant. They filed the claim in their name, and they put some indication on there as to who the original purchaser was. But it was signed by, it was verified by somebody with SIB. It used SIB's address. SIB was and is the legal claimant. The problem and the reason for the rejection was the first sentence of the paragraph you just read from, which says, we will not accept or pay claims filed by someone else on behalf, which is an aggregator, or as an assignee, which is us. They never even got to step two, but we did. It was verified by SIB. SIB is the claimant. They are not the original purchaser. And that goes back to the point I was trying to make, which is you could have a company that was, you know, these are claims going back to 1995. If you're saying the original purchaser has to be physically the person who purchased those, you know, good luck with the business. But if you bought a business, if you bought it lock, stock, and barrel through an asset purchase agreement, according to the state's position, right, you're still an assignee. You wouldn't be able to verify it because you're the claimant. You have the legal right to the claim, but you're not the original purchaser. And that really undoes an assignment. If you look at it the other, go ahead, Justin. No, no, please, finish, please. If you look at it from the other way, if I purchase an asset from somebody and they went behind my back and made the claim because they were the original purchaser, what they've done is illegal. Now the state has no way of knowing that, but this shouldn't be set up to condone or allow, you know, as I said, the state has no way to filter that out, but essentially they can't sit there and say, you're at fault for not having the original purchaser do something that they had no legal right to do because they've sold the legal right to be Okay. Okay. But then let's talk about the first sentence. I mean, the first sentence says, we will not accept or pay claims filed by someone as an assignee. So whether you think that violates the law, that is what it said, right? I mean, you did violate the language of that provision. That's correct. We were the assignee. We believe that that provision was illegal. We went ahead and filed the claim appropriately in our own name. And we argued the assignment issue. And in the lower court, the judge agreed with us. And then the state eventually agreed and switched its position and said, we're not prohibiting assignments. And so I think there's a big problem with that because the notice has to comply with due process. And if the notice is blatantly false, right? The notice we all agree says you cannot submit a claim as an assignee. Okay. If that's wrong, which seems to be the position the state's taking now when it's the position the judge took below, then they need to re-notice the class and say, you can file a claim as an assignee, but here's what you have to do. And then, you know, I'm not saying necessarily requiring you to go back and get the original purchase or would be permissible, but at least the notice would tell you what you have to do. But this notice says you can't file that claim. So it put SIB in a bind. So SIB went ahead, they filed the claim, they filled it out correctly as a claimant. And then they asserted their legal position in court and judge Taylor agreed with him that, and then the state agreed that no, no, we're not barring assignees. So that language is, it is in there. We did challenge it and the result below. And now that the result the state is saying is that that at least the last few words of that sentence were incorrect. But isn't the, isn't the purpose of this to make sure these claims can be verified. I mean, if you've done an asset purchase agreement and you stand or whatever you want to call this, if you take an assignment from some company that bought 30,000 of these televisions, isn't, isn't the state's point that they need to be able to verify that those And that's why they need the name of not you as the assignee, but the SNR, the company that bought the 30,000 TVs. They made that point. And that's a legitimate point, but as is, first of all, we've SIV filed a claim and said SIV, and then it identified who they had purchased or taken the assignment from if the state had, we have no dispute that we would be required to present the same evidence or the same degree of evidence as any other purchaser. And it's the same, you know, mortgage foreclosures are the quintessential assignment in Illinois and anywhere. Yeah. Okay. If most mortgages are assigned, the assignee comes in and they have to prove everything, you know, paperwork is in order that it's a legitimate mortgage, that it was recorded properly. They don't necessarily have to go back to the original assign on, but we don't have any dispute if the notice had said, or if the procedure was you can be an assignee, you can file a claim, but it is subject to the same verification rules. And that would satisfy the state's legitimate concern with false claims. But here they just said categorically at first, if you're an assignee, you can't make the claim. And then, and this goes back to a bank or an asset purchase or anything else. If I purchase an asset and I have the corporate records, right? My possession of the corporate records is just as good or just as bad as the corporations, especially where you're looking at purchases that could be 25, 30 years old at this point, if I can produce whatever degree of evidence they would require, then I shouldn't be discriminated against solely because it's an assignment that goes against all of the Illinois assignment laws. So if I'm understanding you correctly, what you're saying is you read the notice, you understood that you were violating it, but your belief was that it was either unconstitutional or somehow void as against public policy, what have you, you thought it was an invalid restriction. So you went ahead and filed it planning on making that argument at some point. I don't, I don't, I may have said that I may have misspoken slightly because I wasn't retained until after the assignment was rejected. But what I do know is SIV read the notice and they looked at what their options were. And they, you know, their option was either don't file anything because it says you can't as an assignee, right? Or we are the assignee. We own this claim. The original purchaser doesn't even own the claim anymore. We will file it in our own name. We'll identify who the assignment was from and we will go from there. So that, which is probably a more accurate description of what happened. Is this a situation where you simply bought that asset or did you, or, or, I mean, I guess I don't know the answer to this question. Is this something that this business does? They just go around and they buy these kinds of assets. I believe so. Yeah. Or that's a portion of their business. This was not an asset purchase where they bought the entire, right. They bought this. And so, so wouldn't one of the options have been to read this notice and say, well, it looks like we can't do this and give those assets back, unwind those transactions and give it back to the company that sold 30,000 computers or bought 30,000 computers, TVs, whatever it was and say, it looks like you're going to have to do this on your own. You may or may not, right? Because the company they bought it from to the extent they receive value, you may say, no, you pay us. I mean, yes, it would be an option. It's always an option to make another assignment or another contract, but Illinois law clearly supports assignments. It's, you know, and they support assignments of a chosen action, which this is, and the state Supreme court and the U S Supreme court recognizes them as a property, right? So to accept your question and say that's an option. Yes. But the state can't require it because if the state requires that, then what they're saying is we don't honor assignments and state law does not support that state law supports assignments. And, and, you know, I'm, I do a lot of class action work and I like to see people get paid for their claims. And I've seen aggregators more. As I said, these aren't, well, you know, there are abuses and the state has identified them, but the flip side is there are also very positive aspects of what, you know, a company like SIV does, because if you look at it from an original purchaser standpoint, you know, a lot of times they get paid, right? They don't run the risk of, does the case settle? Do I have to submit a claim? Am I here in court? They get, you know, a smaller amount of money, but they get it soon. And that is the basis for, you know, 98% or whatever it is of civil cases settling before trial is, you know, people on one side don't want the risk and on the other, they want the certainty. Here's, here's what I'm not quite grasping though. I don't know exactly what I would have done if I was the attorney for SIV. It sounds like it wasn't you. But it would seem to me that one of the things I might have done is tried to raise some kind of a pre-claim challenge to this notice. And say, we should be allowed to do it. You know, I'm not exactly sure how that would work. If that would require you just engaging with the attorney general or somehow going to court in advance on declaratory judgment of some kind or injunctive action. It seems to me, you might have the choice of fronting this and attacking it because it's unconstitutional or, and maybe this is not, or maybe it's and, when you fill out the form, fill it out, right? Fill out the information that they require, the names of these companies, what have, what have you and then simply make a note that you are standing in their shoes as the S&E. Well, that's what we did. We said SIV on behalf of, or we put who it was for. But as I said, the notice is clear. It says claim it. And once SIV owned that right, they are legally to claim it and the money was supposed to go to them. So we did fill it out and say, it's on behalf of, and we identified that. And I do, I forget there, there is one or are two related appeals to this. And as I said, my partner handled this in the court below, but I do know, at least one of the other parties, I believe they were interveners or tried to intervene, tried to do exactly what you said and brought the challenge earlier. And when it was brought earlier, the state took the position was it's not right because your claim hasn't been denied yet. And then when we brought it, they said, well, you waited too long because you should have brought it earlier at the time when we said it was too early. And Justice Taylor, so that issue was actually briefed. It was challenged. And Justice Taylor on the motion to intervene said, no, we acted promptly because we filed the motion within, I believe 10 weeks of the time we got the rejection notice. But there was another party who did exactly what you said and challenged the notice. And they were, the state took the position that it wasn't right until the denial. So, and how did it turned out differently? Their challenge would have probably been if it was successful, it would have had the same result as ours. So in this case, exactly the belt and suspenders approach you were taking was done just by separate parties. Okay. Thank you. All right. I have some questions for you, Mr. Stein. Good morning. Justice McBride. Good morning. Was there any money exchanged before, before you filed the claims with the SNRs? Did, did they get money? I believe in the case of our assignments, they did not. I believe what they got was the right to 50% of the recovery. Right. So essentially you and the company entered into these assignments and there was no money at all exchanged for the right to the assignment of the claim in the first place. I believe that's correct. I believe the consideration was that SIV would take all of the action necessary to collect that, you know, any recovery that was allowed under the settlement. Okay. And, and why couldn't your client, why couldn't SIV have done all the legwork, gone in, gotten all the paperwork prepared and had the clients submit the forms? Wouldn't that have permitted your assignment to have validity. And at the same time, it would have complied with the objective of this lawsuit. I don't believe it would have complied with the terms of the assignment. The assignment, you know, SIV was the assigning. And I understand just because they didn't pay money, you know, the law certainly recognizes consideration, the fact that they would undertake to do all this and they were the claimant and they were legally the claimant as defined here. So it's not, I don't think the issue is whether they could or could not have, I mean, they may not have wanted to, because maybe if the check goes to the assigner, then they're worried the assigner is not going to pay them. And they have to, who, you know, I mean, I could think of a parade of reasons, but I don't know why I'm not saying that couldn't have been done, but the notice specifically said claimant and as the assignee, they were the claimant. So they felt they were complying with the terms of the notice as best they could. Well, I think that the assignment could have been written. So that everything could have been done just the way I described. Now, let me just ask you this. First of all, this is not a class action. This is a parent's party action. There is no comparison in the law. Would you say that the rules do not apply? A general rules that might apply to a class action lawsuit do not apply to this particular statute that allows the filing of an action for antitrust violations. Is that true? In most respects? Yes. In some respects, no. For example, the notice in a class action is yes, there's a statutory rule, but the Supreme court and I believe the Illinois courts have looked at it and there's a due process component to the notice, right? Because it's, it's your right that's being adjudicated. You have the right to be informed accurately so you can make an informed decision at the appropriate time. So that due process standard, I don't see a difference. I think, you know, it's a constitutional standard and I think you have the right to an accurate notice that accurately tells you what to do and spells out your choices and how to proceed. That doesn't change from a class action to a parent's Patriot case. All right. Well, let me ask you about a few things that were in the notice. First of all, the lawsuit was filed to recover damages incurred by Illinois residents, persons or corporations that purchased these CRTs while they were living or residing in Illinois and for their own use. That much is clear in the first notice, wouldn't you say? I don't know if it was a shorter than one, but it's not. I agree completely. That's who it was. It was brought on behalf of everybody in that position. All right. Then there's an explanation that is specifically asked about, can I submit a claim on my behalf? And the answer was clearly, can I'm sorry, can someone else submit a claim? And the answer is clearly, we will not accept or play pay claims filed by someone else on behalf or as an attorney. That's in there. It's in the, all right. And then there's a certification requirement that says that the has to live in, reside in Illinois, and that they purchased it for their own use. Is that right? You froze there, but I think I understand what you said. And that they purchased it for their own use. That's correct. Those, okay. And those have to be sworn under the penalty of perjury. Is that right? Yes. Okay. So with all these flags that are there, what case would you direct us to that would have suggested that this kind of recovery would have been available to S I B I can't, I don't see anything in the papers. I don't see anything in well anywhere that would suggest that with all this information, this was sort of a good idea. Well, again, I think all of the cases we looked at, we cited based on assignments. Okay. So that an assignment is valid. So the relevant aspect to your question and to, to the issue is the purchase. The purchase had to be made by an Illinois resident for their own use. It had to be made in Illinois. Those are the claims that we have taken by assignment. If you look at it from the other direction and say it has to be the person making the claim, not making the purchase, who has to be an Illinois resident and all these other things. And you could, you could have a company based in Illinois, take assignments from somebody in California who had purchased a million CRTs. Right. And they could come in and say, I'm an Illinois corporation. Here I am. I'm incorporated. I'm headquartered. I'm an Illinois resident. But those claims were not part of the case. The state sued for all of the purchases. It's like a snapshot, like how you determine jurisdiction at the time the claim is made. You know, they are suing for every purchase made from 1995 to 2007 by Illinois residents If you take the position, then that they'll only honor an assignment in some way to another Illinois residents. Okay. That is a constitutional violation. It violates the commerce clause. If you look at Davis versus Brown, which we didn't cite, but I looked it up. It's an Illinois Supreme court case, 221, Illinois 2nd, 435. It says specifically that a chosen action is a personal property right. And both the U S Supreme court and the Illinois Supreme court have recognized that personal property rights can be assigned. So while I do agree that the fee, there isn't, there are many distinctions between private class actions and parents, Patriot case. The flip side is the parents, Patriot case, it's state action. So when the state takes your property right and settles it and releases it and doesn't pay you, that becomes a takings issue. I mean, here it's a small amount, but it could have been, you know, you can, you can think of states where the state has pursued claims against insurance companies for hurricane damage, where insurance companies don't pay. Imagine if they said, well, you know, you assigned your claim because you needed money now to fix your house. And we're not honoring the assignment. We're taking the money that we get from the settlement from the insurance company for your claim. And we're not honored, you know, but we're going to keep it or we're going to give it to somebody else.  Would you really provide us with any analogous case whatsoever? And certainly not one involving an action by the attorney general specifically directed at a purpose, which was to compensate those persons residing in Illinois who actually purchased these indirect purchases of these Catholic gray tubes. But would you agree that an assignee cannot have any rights greater than the That's it. That's exactly correct. That is true. Okay. So in this case, what we have is a company out of, out of the residents of Illinois who's actually, who had never consumed or had these purchased for their own use, benefiting and actually having a greater right than the individual who actually purchased these in the first place. No, no, that is not correct because the assigned or was an Illinois resident. Okay. But your company wasn't. Your question was, can the assignee have greater rights than the assignor? And the answer is no, they can have the same rights as the assignor. That's the whole point of the assignment. The assignor was an Illinois corporation who had all of the rights. The state doesn't dispute that. Doesn't your, doesn't your client have a greater right because you didn't purchase these for your own use. The company didn't reside in Illinois at any time. And yet you're able to try to receive compensation that the lawsuit was never designed to accomplish. I mean, I'm sorry. I'm sorry. Okay, go ahead. Mr. Stein. No, no. The lawsuit was trying to accomplish the rights. It's exactly what you said. You can, I started out. I have no rights as the assignee. I could be living in Alaska. It was that I have no rights. You are correct that an assignee does not have, cannot receive any rights that are greater than the assignor, but they can receive any right. The assignor has that can legally be assigned. There is no dispute here that the assign or at least four of them resided in Illinois. They were headquartered here. They had all of the rights that the state was seeking to advance and the state advanced their rights, sold their rights, got money for their rights and released their rights as an assignee. I can acquire all of the rights of the assignor, nothing greater, but I can require acquire them. And that's what SIB did. So the fact that SIB was out of state is an irrelevancy. It would be, it would matter if SIB tried to file a claim for CRTs it purchased, but it can legally acquire rights through assignments that are valid. And that's what happens here. And you, if you prohibit it and you say, we're going to allow assignments, but only to Illinois corporations, that's when you have a constitute because it is a parent's Patriot case. That is a clear commerce commerce clause violation. The state, the state can not discriminate against out of state purchasers of an assignment, against out of state purchasers of monitors, but that's a different issue. Did you say at the beginning of your argument that the state could have barred assignments if they chose to in this action? What I said is I believe that the state had brought the action and said, we are excluding from the case assignments. It's beyond the scope of this case. It may or may not have been legal, but I believe there's certainly an argument that they could have legally done that. Okay. They didn't do that here. And they included the exact, I don't think they'll dispute it. The claims that SIVs assign or had are released by the settlement. The state got money for those claims. And now what they're saying is SIV as the assignee is not entitled to the money the state got to release its claims. My point was, as in a parent's Patriot case, I think they could have narrowed the scope if they had wanted, if they had wanted to, but they didn't want to do that. They put everything in there, including the assignments in terms of what they negotiated the release for. Now, you know, today you mentioned asset purchase agreements, but there's nothing in your brief that was comparing an asset purchase agreement with what was, what occurred here. Was there? No, no. In preparing for this argument, I was thinking about the state's position on assignments and that's, that seems to be the logical conclusion to me. I don't know that you would have found a case that would have helped you because I think if you had, you would have included it in the brief. There were a number of California cases involving these cathode ray tubes, weren't there? Yes, Your Honor, there were. Did any of the kind of activity that occurred here, was it approved of in those lawsuits where an assignee submitted claims? I don't know the answer to that, Your Honor. Is there any case that you're aware of that you would suggest would have SIB tried to in this case? I'm sorry, Your Honor, you froze again. I'm sorry if I froze. Is there any case, I mean, you cited general principles of due process, nothing specific. You didn't really direct us to any case that would have been analogous to this. And normally I wouldn't ask someone to cite something that the attorney general can't respond to, the assistant attorney general can't respond to, but what is your best case for suggesting that with all the red flags and everything that was contained in the notices that what was done here, you know, complied with the action? Your Honor, we did not find published opinion or an unpublished opinion going in either direction on this. We did not find anything that upheld this kind of restriction on assignments. So the reason our brief is how it is, and we went through everything is that assignments are legal. They're valid. We had the proper assignment. We cited all the applicable case law. You know, I could cite more cases for the same proposition, but to answer your question, we did not find a single case on point, dead on point either way, where assignments were prohibited in a parent's Patriot case like this or allowed. Okay. All right. We're going to give you some time for a rebuttal, but I'll ask again, if justice Burke or justice Ellis has any other questions at this point, no question. Not at this point. All right. Okay. Thank you. Miss wonder. You may proceed. I think it's useful here to go over and clarify what the distribution requirements are and how they're working, what they're intended to do. And then I'll talk more about these contentions, but there are a couple of things that was mentioned that I'd like to maybe just address now. So I don't want to lose track of them later. Okay. SID is suggesting here. Well, we have to be considered to claim it. We're to claim it because of our contract and we did our best to comply with what the notice and claim form provided. And it's clear from the notice and claim form that, and the judge also determined that the claimant is the actual purchaser. The actual purchaser has to file a claim and verify the claim. And they didn't do their best to comply with that. None of that was done here. And. They're also suggesting, and there's no reason why those procedures, which I'm going to talk about are very reasonable and appropriate procedures. It doesn't end things just to say, Oh, that's a limitation on assignments. I mean, they can label it whatever they want, but we would have to look at, is there some infirmity in those procedures? Is there some constitutional problem? That's not the case here. I'm going to talk about that more. They also suggested that there was a change in the state's position at some point. And the state's position has been consistent throughout that. These distribution requirements are reasonable and they apply to all claims and they needed to be complied with and they were not complied with here. They have also suggested that they're somehow in a different position because they're calling themselves an SME. And that they are not really a claims aggregator. So that the concerns that the state has somehow wouldn't apply to them. And that it's not the case. They are in every sense of claims aggregator that is their business, their, their contract that they're referring to. It's worth keeping in mind the actual contract is called something like claims monitoring agreement. They're acting as an agent. There was no money that was ever put up for this, provided by SIB for this assignment. They're acting as an agent. All they can do is they're obligated to try to file claims in settlement claims. And then the,  the SIB and its client, the purchaser. So the purchaser is still very much interested here. They are getting 50% of the proceeds. This is just an agreement to split that. So a lot of what SIB is, is claiming is, is a problem here comes down to a matter of where the check is going to be sent in the first instance, because under these procedures, we would be dealing with the purchaser, but the purchaser then is free to redistribute any funds to SIB. And what SIB would, would it essentially comes down to SIB having to obtain its portion from its client, rather than being mailed a check directly. And that is not an objection of some type of constitutional moment. But backing up, looking at these procedures here, it was the agency's obligation to implement the distribution requirements. And they did so based on their experience in other settlements and their judgment of how best to create a manageable and efficient distribution that reduces the opportunities for confusion and fraud and mistake. And the record here provides examples or discusses some of the problems that have occurred in past cases and settlements. And also here including an instance of a purported SME submitting thousands of very doubtful claims. And you also have instances of duplicative and conflicting claims that are filed by different entities, different aggravating entities on behalf of the same purchaser. And then you have large numbers of carelessly filed claims and the like. In this instance, SIB is talking about six claims, but they had actually filed 62 claims. And then they ended up withdrawing most of those claims. If they hadn't done that, those were all claims that would need to be processed and reviewed by the claims administrator when those were largely ineligible claims. And the court approved these procedures. The court looked at what was being proposed and approved the procedures. And then the distribution requirements were specified in a court-approved notice that went out to Illinois consumers. And so there are two intertwined requirements that are at issue here, that the actual purchaser filed the claim and verified the claim. The purchaser filing means that it's going to be the purchaser's information that's on the claim form. The purchaser's name and address, the quantities of the products that are purchased, and their Illinois residency. And then at the end of the process, if everything is in order, if there's a settlement check, it's going to be physically mailed to the purchaser. And then the purchaser can do what they want with that. And if they have obligated themselves to do something with that, then nothing in these procedures prevents that. And the verification requirement that's on the same claim form, the purchaser is verifying, under penalty of perjury, that the information that they're supplying is correct, including the quantities and their Illinois residency. And we want the purchaser to do that because we want the purchaser to stand behind their claims. We want the purchaser's verification because then you have this information coming from someone who has knowledge of what was purchased, and you have someone who is binding the corporation. That is making the purchaser take this claim seriously and not carelessly, and look at the representations that they're making and stand behind them. SID here is trying to separate out those requirements artificially, but they're intertwined and they work together. They work together to promote this clarity and accuracy. And there's no question that SID didn't comply with those requirements here. They submitted the claims on behalf of the purchaser with their own address, and then they completed the verification section, not an employee of the purchaser. So because they were non-compliant, they were rejected by the claims administrator, and they were properly rejected by the circuit court as well. Under the case law, the procedures that the attorney general implemented should be upheld unless there's a statutory or constitutional problem. And that's not the case here, where you have these very reasonable procedures that are intended to protect the integrity of the distribution. I want to let you know you've got about a minute and a half to go. So focusing on what they're saying, they're claiming that assignments were prohibited here. Not anything that might affect their contractual preferences is impermissible. You would need something that rises to the level of a statutory or constitutional violation, and they don't have that here. They're calling this a taking, but there is no taking because there was never a valid claim in the first place where these procedures were not complied with. There's no procedural due process. They entered their agreement with full knowledge of these procedures, and there's no substantive due process problem here because there's no constant shocking behavior about the situation where SID has to obtain its portion from its client. There's no arbitrary restrictions here because these requirements are serving a very important function. I think looking at SID's contracts with its clients highlights that there is not a weighty contention because, as I've said, if there are any potential proceeds, and that's way down the line, if they get through all the other problems, then you would have the split between SID and the purchaser 50-50. A check has to be sent somewhere in the first instance, and very reasonably a check would be sent to the purchaser here. We have to sum up now. So this is at most an inconvenience to SID. It's affecting their contractual preferences that they can't do their contract exactly the way they want. In contrast, there's a lot at stake for the state because you're losing a very important layer of protection against fraud and confusion in a situation involving thousands of claims. You would have those protections lost. And there is nothing here that warrants that result because these are very reasonable and appropriate procedures, and there is nothing impermissible about them. All right. May I have a moment to just answer Justice Burke's question about, there was a question about the residency requirement. Well, I think that the justices will ask those questions. All right. Okay. Justice Burke? Ms. Wander, do you want to tell me about the residency requirement? You had asked about that, and that is another problem with about half of the claims here, that it is a requirement to participate in the settlement that the original purchaser be an Illinois resident, meaning that they be headquartered or incorporated in Illinois. And this is another example of SRP wanting to rewrite the requirements. And they said, well, we think it's enough if you just have a purchaser who was doing business in Illinois. And we want that to be the definition, but they don't get to make that determination. They're saying, oh, there's some difference between citizenship and residency. And the cases that they cite don't support in any sense that the attorney general is required to have a definition of residency that the definition that they want. And for the clients who aren't headquartered or incorporated in Illinois, then their claims aren't released either. They're just not part of the settlement. So SID is trying to expand the scope of the settlement here. And there is nothing that would compel the, they have this very broad definition of residency. There's certainly nothing that compels the attorney general to accept that. And there's nothing that supports that definition of residency. So that's just another reason why some of those claims were invalid. But it's not an issue here that the court needs to get into because they have a more fundamental problem of they never fulfilled the distribution requirements in the first place. The purchaser can't assign more than it can. And here, a part and parcel of anything that the purchaser might have had to assign to someone else was that the distribution requirements be satisfied. The purchaser still has to participate and substantiate their claims. And there was no impediment or problem with that occurring. Thank you. No other questions. Justice Ellis. Thank you. Good afternoon, Ms. Wunder. Thank you for your presentation. Just a couple questions. Trying to run through everything you said. First, let me ask you a softball, I hope. The claims administrator, is the claims, does the claims administrator work for the attorney general? Yes. The claims administrator was hired to assist in the process of administering the distribution. Okay. Because there's an initial response here from the claims administrator. And then there's the attorney general's office arguing in court. And I'm wondering to what extent you would consider yourself, for lack of a better word, bound by what the claims administrator said. The reason the claims administrator gave. Well, the claims administrator is our agent. We have established the distribution procedures. That was the attorney general's obligation. And it's ultimately the attorney general's obligation to oversee every aspect of the settlement. So if the claims administrator says that this is, this application is rejected because you're an assignee. And maybe you didn't read what we said, but no assignees allowed. Are you in any way limited to that argument when you defend it in court, or may you expand on that? I read it as you were a bit more expansive than that in court. First of all, would you agree with what I just said? That you were a little more expansive on the reasoning? I do. Because these requirements are intertwined. And their claims are rejected because they brought that claim on behalf of someone else. That's not a surprise. We said that. We said claims brought that the actual purchaser has to bring a claim. Claims brought by an assignee on behalf of someone else would not be processed. I don't think that translates into an impermissible restriction, but that's a different issue. And when the claims administrator is saying that you brought this claim on behalf of someone else, so it's not valid. I think they're parsing awfully thinly because then bound up with that is the idea that you haven't properly verified the claim because the purchaser has to verify the claim too. That's part of the same form. So I don't think there's really two different reasons here. I think they kind of merge together. And in any event, they needed verifications from the purchaser that is part of what they have to do. They didn't do that. And therefore when they went to the circuit court, the circuit court properly denied their claims. Let me ask you another question. We may be going beyond the briefs. I just want to get my head around this myself. Is there any reason that the claims administrator or your office could have taken the position that you didn't follow the rules technically, but we're going to deny it without prejudice to use a legal term? We see here who you are. We know you're an S&E. You're identifying the people who really were the purchasers. You're not giving us their address, but you are giving us that information. Is there any reason the claim administrator couldn't have said at that point, fill this out again and do it right this time? The claims procedures are put in place across tens of thousands of claims. And they were given notice of what these procedures were, and they didn't comply with them. Is there any precedent for doing what I said to your knowledge? I'm not sure exactly following what you're proposing might have happened. Well, I can certainly think of examples in my lifetime where I have filed forms with the government and they have told me that I didn't file them correctly. I once signed a marriage license with blue ink and they rejected it and said, but they didn't say these people don't get to get married. They said, give it to us again in black ink. Is there any precedent for anything like that happening in this situation, saying you didn't do it right, but we're not saying no, we're saying do it again? Here, we said in the notice plainly, here's what you must do. No, I know that's your position. I know, I know. But is there any precedent for that? If the answer is that that's not what you do, then that's a fine answer. I'm just trying to get my arms around this. Again, my answer is we said what you needed to do. They didn't do it. And there's nothing that obligates us to, when there are tens of thousands of claims, go back to the claimants and say, oh, you made a mistake. Can you fix this? Can you do it differently? Can you have the actual purchaser file and verify this instead of you? And that would be an enormous undertaking that would exhaust a lot of the settlement resources that are being used to administer the settlement in the first place. Okay. Fair enough. My final question is about the standard of review. Is it your position? I'm sorry, my dog has entered the room. Is it your position that the standard of review is abuse of discretion? I think it depends on how you're framing the question. I think what they need to show here, they can't just call this a restriction on assignments and call it a day. That they have to show some type of, because there are many things that affect a contract. It's not impermissible per se. They would need to show a statutory or constitutional defect. And it's my position that they can't do that here. I understand. But what the court looks at, I am actually interested in the review question. And those types of things, that is more of a legal issue. Whether there's a statutory or constitutional problem. But then they also seem to be saying, to the extent they're saying there's just something fundamentally unfair about this, which again, there is not, because these are very reasonable procedures. That then I think becomes an abuse of discretion with the circuit court who considered these very procedures and approved them, finding them to be reasonable. Well, it seems to me, we have a situation here where there is no dispute of the facts. We have a written document filed by SIB. You are looking at that document and you're looking at your notice and you're saying this didn't comply. Why is that an abuse of discretion standard? Wouldn't that just be a straight de novo review? Can't we perform the exact same function as judge Taylor? I think it's, I'm looking at it as it didn't comply, but they have to show that there was something impermissible about these procedures and. Well, whether they complied or not. Well, I guess they admit they didn't comply, right? They do. They admit that they didn't follow the letter of the notice. Yeah. Okay. If you need to, if you wanted to, I interrupted you. If you wanted to expand, go right ahead. I'm trying to get my arms around exactly what we're deciding here because some of the things that Mr. Stein has said were squarely in his brief and some are a bit beyond it. We're talking about the overall validity of this notice, whether this notice itself and the state action. Constitutes either a taking or just, you know, a denial of due process, a denial of property rights and assignment rights. That doesn't jump out at me as an abuse of discretion standard. Because they do need to, would need to show that there is some type of statutory or constitutional violation. They're characterizing more of it as a substitute due process, which is not the case because there is no arbitrary conduct here, given the important purposes that these requirements serve to protect the integrity of the distribution. That is the type of thing that a court would look at to know though. But I, and that's what I think that the court is doing here. I was also saying to the extent that they're somehow trying to make this, you know, more just of a, like a fundamental fairness issue. I think that really would drop out here. You need to get to her constitutional violation, but if you just look at it like that, then there is a maybe kind of analogously to if you're looking at, this is not a class action and it was very different, but in a class action situation, court does sort of look at the fairness of settlement procedures. And that usually has an abuse of discretion standard. So in that sense is how I think abuse of discretion by men. What I view this as more of the attorney general has broad discretion here and absence a statute or a constitutional problem. The information implementation of these procedures should be affirmed. This case in my brief that I think is, is useful for this, Bigelow group versus records. It sort of gets into how you review discretionary executive action. Okay. Thank you very much. I don't have any specific questions at this time. So with that, I'm going to turn it over now again to Mr. Stein for his rebuttal remarks. Thank you, justice and pride. A few points. This wonder stated that the SIVs claim or the claims from its assigners were not being released. They clearly are. And I would just ask the court to look at the release. The Hitachi agreement is in the record. If you look at paragraph eight of the release, it releases quote, any indirect purchaser claims for purchasers that at any time resided in Illinois. Okay. It doesn't say we're headquartered or had their incorporated in Illinois. It is very broad, which is the same allegations the state made in the complaint and the state that was the responsible, the accurate, the best thing for the state to do. I don't know how, again, I don't know how you would have limited the claims to companies that were assigned to SIVs. It's very hard to figure out the purchases that way. So there, although the state says now they didn't release SIVs claims, the black and white language of the release says differently. They released the claims that were assigned to SIV and it's not a class action. It's a state action, which has a higher constitutional standards attached to it. And as I said, the state didn't, they chose to squeeze the signings out after they took their claims, their property rights, settled them, released them and got money for them. And then said, no, you, there's no way for you to get the money for the claim that you now own. If they had narrowed it at the beginning and said, because of the administrative problems, we're just not going to pursue claims on behalf of assignees and narrowed the definition of what they were pursuing and what they were releasing. That would be fine, but they can't take your rights, settle them, get paid for them and say, well, we're giving the money to anybody else and there's no way for you to get it. And Ms. Wunder did admit that our claims are rejected because we were an assignee. And she said, well, there are other reasons, but that's not what the claims administrator said. But more importantly, the other reasons are irrelevant, right? Because what they're saying here, it proves our point, which is as an assignee, it wouldn't have mattered what else you did. You were not getting past step one. We were not going to let you file a claim because you're assignee per se. Okay. Once they do that, that is illegal. It's an irrational distinction. And it doesn't, you know, it doesn't even address their problems. We said all along, we need, we're aware of fraud. We need to prove to the same degree or lack of certainty that any other claim that would prove these claims. We're not disputing that we would have to do that, but we should have been allowed to do that. And, and justice Ellis, respectfully, we do not admit that we didn't file, follow the letter of the notice other than the fact that we were an assignee and we filed as an assignee. But when you get beyond that, the notice says claimant, it doesn't say original purchaser in terms of, you know, it says, quote, the name and address of the claimant must match the name and address of the payment is to be sent. We were the assignee. We are the claimant. It puts you in a pickle the way it's worded. If it had said, if it hadn't started out by improperly saying there are no assignees allowed to make claims, if it said as an assignee, you're required to go back to the original purchaser. Okay. That would have been different. But, and as I said to justice McBride before, the two process concerns around the accuracy of the notice apply here the same way they do in class actions. It's a due process issue. It's not a class action issue. So if the notice on its face is wrong and you could be an assignee and file this claim, then the notice should have said, as an assignee, you're allowed to do this and told you what you need to do. It didn't do that. It just said, if you're the claimant, you're the one who needs to verify it. And that's what SIV did. You know, and so, well, I do agree with the state. They have a legitimate concern with parsing out fraud. I will tell you as someone who spent 30 years doing class actions, it's one of my, it's a, it's a legitimate concern. And it's probably one of the biggest concerns. Anytime I settle a case is not parse it. Parsing out fraud is a smaller problem. Getting claimants paid is always your biggest problem. And to take an approach that you just wholesale wipe out, you know, a large group of claimants from ever being paid. I don't think it's legal, but it certainly doesn't address a legitimate concern. The state should be just as concerned with making sure that people who have legitimate claims are able to make their claims and get paid because that's what they went through all this trouble and hard work to pursue this action for. So if the notice had provided a procedure for assignees, I would have said that's fine as I'd be, you know, could have followed it, but it didn't. So they followed the notice as best they could based on how it was written. And with that, I don't think I have anything else to add your honors. Justice Burke. No question. Justice Ellis. I do have a few, I apologize. How, how is the state preventing an assignment of claims from taking place here? I mean, it seems to me that you are still able to pick out some company and say, Hey, did you buy these TVs or probably computers with cathode ray tubes. Let's make a deal. I'll go find these class at not class action settlements, but if it's a class action settlement, if it's a cat, if it's a parent's Patriot case, I'll find them. That's what S I B does. I'll fill out the paperwork and we'll split it 50 50. There is nothing in any of this that stops any of that from happening. As far as I can see it. The difference is, is in how you fill out the paperwork. Now the state is concerned that they might get duplicative forms or they might get fraudulent forms. And so they say, Hey, The person who signs this has to be the person who the person who signs a verification. I bought these computers has to be the person who bought the computers. They have to be the person that asked me, can't sign that with personal knowledge. They want to be able to know that. And so, yes, you're going to have to put that down. And then you're going to have to live with the fact that the check is going to get mailed to somebody else. But other than the fact that the check isn't going to get mailed to you, nothing stops you from entering into that agreement. Does it. So that assignment agreement, nothing, nothing, the state's doing. They're just not going to send you the money. What am I missing? How was this? How is this some kind of a restriction on assignments? It's a restriction on who can file, but, but you could file it for them. You could fill out the paperwork for them and earn your 50% that way. They just want to know who actually, who actually bought the TVs. Whatever computers. It's to address your, first of all, the state admitted, you know, Ms. Wunder just admitted that they do not allow assignments. She said it was correct. When you asked her about the administrator, she goes, they were correct. Okay. That assignments are not allowed. So they can't really have it both ways, your honor. Counsel, counsel, they, they, they said that we will not allow assignees to file a claim. They didn't say we won't allow assignments. I mean, how could they possibly say something like that? But they said they won't allow assignees to file it. And I think what Ms. Wunder is saying, and I think I understand her point is that maybe that's a shorthanded way of saying that the whole process here is intended to make sure that we have the people who actually purchased the CRTs signing these things. One shorthand is say no assignments, but, but I don't think they mean that Illinois is through state action, prohibiting assignments. Are they? They are, your honor, because, well, what you've just described an assignment like any other contract can be any variety of things. What if you took an assignment because the company was going out of business? It was a sole proprietorship. The person's dying, right? And he's, you give them money and he's not going to be around to verify the claims, but you have all the business records. Their restriction doesn't even address their problem. If you're dealing with a business that purchased stuff in 1995, the odds are very slim. There's going to be the person who made that purchase at that business, if it's still in business, but the business records, and this is what we do at banks and foreclosures and everything else are there. So we're not saying we don't have to produce the same evidence that any other business would have, but they are. And your hypothetical is one way you can make an assignment. But if you take the position, that's the only way we're going to, the typical assignment is I give you money or I agree to do something for you and I own your right. And that's what the state has recognized for, you know, over a hundred years. If the state says, well, we won't recognize that type of assignment, but with hindsight, if you go back and re-engineer your assignment to be something of, I'll provide the service, but you still got to do that, we'll honor it. It is a restriction on assignments. They're just saying if you have a particular type of... But isn't the upshot of your position then that two private companies can contract any way they want. And if that happens to conflict with how the state is trying to set up a process, then that process is now suddenly invalid because it's stopping your assignment. I mean, you have freedom of contract, but you also have to follow rules put forth by the state. And if that has made it inconvenient for you because of the way you've set up the assignments, is that the state's problem or your problem? It depends on how you rule. But the answer is if they just flat out restrict assignments, which this notice says, okay, you can't file the claim as an assignee. It's not a restriction on assignments. It's a restriction on who can file. But then the other problem is the notice doesn't tell you what to do if you're an assignee. I read it as it's a restriction on assignees. Now they can try to argue semantics or parse it very thin and say, you can make the assignment, but the assignment, if the assignment is a complete assignment, that is not valid because you have to go back. And again, the notice didn't say original purchaser, it said claimant. And as the assignee, you're the claimant. I understand what you're saying. And I think if this, and I've said this repeatedly, if the state said we'll honor assignments, but if you're the assignee, you need to get a verification from the original purchaser, assuming the original purchaser is alive or in business. I mean, they would have to allow you some way of making the claim if all, if you had the business records, but the entity or the person was not alive. But if they had notified you and set up a procedure that complied with what you're suggesting, which is to say, if you're the assignee, here's what you have to do. I would say, that's a different situation that may very well be valid because it would address both concerns of getting people paid and weeding out fraud. But they didn't do that here. They said, if you're the assignee, you can't make a claim. And as the assignee, you're the claimant. And as the claimant has to verify it. I would imagine that the state could not possibly care less whether you're an assignee or not. They probably don't care about assignments. All they care about is give us the names of the people who actually bought these TVs and these computers, whoever actually submits the form and whoever gets 50% of something or 75% or 100% of something. They probably couldn't care less. They just want to make sure that they've got the people who actually did it. But that's what they did here, right? They denied it because we're an assignee. We didn't get it. They denied it because you didn't fill out the form the right way. You couldn't. You filed as an assignee, right? I mean, that's why they denied it. They didn't say, well, you're an assignee and we don't like assignees. They said, you didn't give us the information we needed. So it's denied. No, they didn't say we didn't give them the information until the hearing. The rejection letter said you're rejected because you're an assignee, period. It didn't say anything about lack of information. And, you know, I mean, facts matter at the end of the day, especially in the appellate court. I don't, if I get a letter from the state and it's as they admitted it's a duly authorized agent and that's a form letter where they could fill it, you know, it was set up to put in all the reasons for the rejection. And the only reason for the rejection says because you're an assignee and the reason it was submitted by an assignee. Then the fact that with hindsight they can come up with other reasons that you wouldn't have been able to comply with because of the way the notice was written is, is it's not right. Okay. Well, I understand your position. I have no further questions. Thank you. And Justice Ellis, I had the same problem with my dog. So I made a beauty appointment poller for her this morning because she has the camera's at the wrong angle. All they see is his pointy ears coming in and out back at the same time. So what it's worth, I shit my dog off too. Well, she, she knows her way in. I actually have the door. It's been good for the, you know, vets and dog grooming services. Yeah. Right. Right. So I hope I'm not going to break up here, but I keep getting a little note that my internet is unstable, but the actual declination that was received from the administrator was the following. Mr. Stein, your form has been rejected for the following reasons. The claim was submitted by someone else on behalf of, or as an assignee of the person or entity who actually purchased the CRT television and monitor. So it doesn't say we will not, we're rejecting this because you have an assignment. It said the form was not completed by someone. So I think that, you know, maybe, maybe one could say that's parsing words, but that's what the administrator actually said. And I don't think that the decision here should depend on how the claims administrator rejected this particular submission. But doesn't it become clear from the entire record that there were multiple reasons why the attorney general wanted to make certain that the noted that the claims that were submitted were coming from individuals that they could actually verify. And in fact, in your own particular case, there was a submission of 50 claims that were from out of state residents. And it was apparent from this record that that was one of the very reasons why these claims were going to be limited to purchasers, you know, in Illinois and who, you know, purchase them for their own use because of the expense that they would have to go through if there were multiple claims like this. So how do you, how do you respond to what is plainly and was a concern of the attorney general in this action to all of the work that would be needlessly exercised with claimants that were from out of state or for whatever reason, they, they, they didn't really purchase one of these televisions or monitors. They had a Catholic rate to that doesn't vary. I mean, that's what claims administrators do and it doesn't vary from whether it's an assignment or not. Right. I mean, any corporation from out of state could file the exact same claim and it would get rejected here. SIV had claims. And I think, I don't know that they were all because they were out of state. Some of them may have not been, may have been done as an aggregator and they just said, we're going to withdraw those. So they, they took a look. I think somebody filed the wrong ones and they went back and then withdrew them voluntarily. But there's nothing again, the distinction between an assignee or an assignment has nothing to do with being in state or out of state. No, that's not my point. My point is, is that there shouldn't have to be an enormous undertaking to weed out claims that should never have been filed in the first place. And the less, the more amount of time spent in weeding out the claims, the less that the actual claimants who purchased these in Illinois for their own use received at the end of the day. So to say that that's not a factor at all you know, the attorney general had a purpose in this. And, and if you want to, you know defeat the purpose, then, you know, let everybody file and then have the claims administrator read through a bunch of claims and maybe thousands will be, you know, ineligible. And that's not something that the attorney general can kind of try to circumscribe at the beginning. No, you're right. They can do that, but they can't do it on the basis of it being an assignment or a non assignment. And that's what I want to make really clear. We would have to comply with the same standard as anybody else. But that's not why we're rejected. And, you know, facts matter. We would have to provide the same information, whether it be an affidavit based on business records or the business records themselves that any other business would have to provide. But there's no difference if I own the business and I say, here's my receipts. For example, if somebody had them going back that far, right. There is no difference between me verifying that those are the receipts. And if I have the same receipts and I say, I took an assignment. And in the assignment, I got these receipts and here they are. And it shows the business same exact receipts. Then those are the claims that the state settled. They released. And I, you know, the fact that I purchased them as an assignee shouldn't put me behind the eight ball either. So we agree that they have legitimate concerns, but the standard should be the same of what you're required to show to prove that it was an actual purchase. You can't, the state, the law does not allow you to distinguish based on whether you're an assignee or not. And that's what happened here. And again, they could have done it differently, but when you go back and read the notice, it talks about claimants verifying. It does not talk about purchasers. I don't think the scenario that Justice Ellis just described was any different than the first scenario I described to you. And that is that there was a way that an assignee could have complied with the provisions just as he suggested, you came up with some other hypotheticals, but the facts here are that an assignee could have gone in with a contract and said, we're going to do all the work. We'll fill out all the paperwork. We'll go through all your records. We'll submit the claims. We will prepare those claims. You need to verify them at the end of the day by your signature and we'll do that. There's nothing that would have ever prohibited that. Is there under this particular notice? And thank you. There's not, well, probably not. It depends on how they have restrictions, but I'll take your hypothetical as given. There's nothing that would have restricted it. But the problem is Illinois recognizes the freedom to contract. So what you and Justice Ellis described is one way an assignment could have been written with hindsight, knowing what the settlement was going to require. Typical assignment is I, you know, I pay you now or I agree to do something for you now. And I could come up with a thousand ways an assignment can be written. Yours is one of them. And that would have complied. God bless you. But you can't, you can't discriminate or you can't tell businesses this is the only way you can do an assignment. And if you did an assignment, somebody walked in and paid you cash for your claim and took your claim and took your records that we won't honor that assignment, but we'll honor the one where you still have to do half the work or all the work or, you know, however you want to word it. So I do agree that that assignment probably would have been workable, but the state just doesn't on the assignment law, the state doesn't get into freedom of contract and telling you, this is how you have to assign this claim and any other way isn't going to cut it. Well, but, but if this way was acceptable, I don't see the violation of the freedom to correct. But do you agree? I think the standard review is an abuse of discretion. That's pretty much all you cited in here. I think it could be viewed as DeNovo. We viewed it as essentially a non-issue because it's a per se abuse of discretion to get the law wrong. And we think these are, you know, the facts largely are not in dispute. These are legal questions. So whether you say it's abuse of discretion, but the applying the law incorrectly is automatically an abuse of discretion. And of course you have DeNovo review as to whether the law was applied correctly. Well, could I just then follow up with this? It would be my last question. The claims administrator rejected those submitted by SID. The court then reviewed whether or not that was a proper rejection. And the reasons for the rejection was because it didn't comply with the statute. So is that an abuse of discretion when we're looking at someone else looking at how someone rejected a notice provision or is that a pure question of law? I believe that's a pure question of law based on the arguments we've made. And there is a case, the case I cited is not in our brief that I cited earlier that talked about choices in action being a property rights also held that it was reviewed DeNovo. And that was again, Davis versus Brown, the two 21 Illinois second four 35. You did cite a case in your brief that did suggest or did state that a chosen action is a property, right? So, I mean, all right. Well, again, sorry, that also held that it was subject to DeNovo review. Yes. Okay. Any further questions by the other panel members, justice Burke or justice Ellis? All right. I, I want to thank you both on behalf of the panel. The case was well argued well briefed as you know, important issues for us to look at. So thank you again for your time and efforts. And we will take the matter under advisement. So thank you all.